## Kiesel v. Kiesel

*Frederick C. Horn*, for plaintiff.
*James J. McNamee*, for defendant.

TREDINNICK, *J.*, July 8, 1981—This divorce action was commenced by the wife filing a complaint

on November 23, 1977, alleging indignities on the part of husband. The husband counterclaimed on the same grounds. On August 6, 1980, wife petitioned to proceed under the Divorce Code of 1980, and to file an amended complaint. Leave was so granted by order dated August 6, 1980. An amended complaint was duly filed wherein wife alleged the marriage was irretrievably broken, and requested dissolution of the marriage, equitable distribution, alimony, counsel fees and expenses, and custody of and support for the children. A separate order has been entered disposing of support for the children. The record suggests that no hearing has been held on the issue of custody of the children. They have remained with wife, however, subject to visitation with husband, and the court assumes the parties have amicably resolved that issue.

The cause of action in divorce was referred to a master, who has submitted a report recommending the entry of a final decree in divorce. The parties have stipulated that the master's report may be considered despite the fact that other matters have not been disposed of, and a decree of divorce has been heretofore entered.

There remains the issues of equitable distribution, and the request for alimony, and counsel fees. Hearing thereon was held before the undersigned on June 16, 1981.

## FACTS

The parties were married on June 21, 1969 in Bala Cynwyd, Montgomery County, Pa. They separated on February 15, 1978. Two children were of this marriage, Kristin (d.o.b March 8, 1971) now

ten, and Signe (d.o.b. May 30, 1973) now eight. They attend public school.

Mrs. Keisel is 31 years of age (d.o.b. November 24, 1949) and is in good health. She attended one year of college, but has never been gainfully employed. She would require training to be employable in any skilled or professional capacity. She expresses a desire to complete her college education and become certified to teach. Her father is a medical doctor, and is Chief of Surgery at an Allentown, Pa. hospital. The record is devoid of any information as to her family apart from that fact.

Dr. Kiesel is 42 years of age (d.o.b. November 8, 1938) and in good health. He is a medical doctor specializing in the field of orthopedic surgery. He has recently moved to Florida, and, as of March, 1981, commenced the practice of his speciality there as a sole practitioner. Prior thereto, he had been practicing in a medical group in Lansdale, Pa., where his gross income was $98,617 in 1980. His current earnings are at a $40,000 gross per annum rate. He draws $1,000 bi-weekly. His parents reside in the same community in Florida. The record does not disclose any other facts concerning them or their family other than Dr. Kiesel.

## MARITAL PROPERTY

By stipulation and from the evidence adduced at the hearing, the court finds that the following assets are marital property, as defined by section 401 of the 1980 Divorce Code:

1. Real Estate: Premises 190 Fawn Drive, Harleysville, Lower Salford Township, Montgomery County, Pa., valued at $120,000. (Subject to mortgage with a principal balance of approximately $47,500.) Jointly owned.

2. 1977 Chevrolet Nova automobile, valued at

$1,800. Record does not disclose title information, however, the asset is in wife's possession.

3. 1977 Ford Van automobile, valued at $4,000. Record does not disclose title information, however, the asset is in husband's possession.

4. Flat Silverware, valued at $3,200. Jointly owned.

5. Gun Collection (Four guns), valued at $900. Owned by husband.

6. Furnishings, valued at $10,000. Jointly owned.

7. Pension Fund equity, reduced to cash, February 1981, $20,000. Husband owns.

The court finds that a certain clock is nonmarital property under section 401(e) of the Divorce Code of April 2, 1980, P.L. 63, 23 P.S. §401(e), having been a gift to husband.

After considering all relevant factors, as set forth in section 401(d) of the Divorce Code, the court directs equitable distribution of the foregoing as setforth in the decree following this opinion.

## ALIMONY

Considering the factors set forth in section 501(b) of the code, the court is of the opinion that the wife lacks sufficient property, including that allotted to her in equitable distribution herein, to provide for her reasonable needs, and further, is presently unable to reasonably support herself through appropriate employment. Under such circumstances, the court *may* allow alimony. In exercising that discretion, the court is required to consider all relevant factors, including fourteen enumerated in section 501 (b) of the code. We have done so in the present case, but will comment only upon the major factors which seem to have particular importance here.

First, it is obvious that there is a great disparity in earnings and earning capacity between the parties. Husband presently earns about $40,000 gross per annum, and, we believe, has an earning capacity, which ought to be realized within a few years, of probably at least twice that amount. Wife has no present actual earnings, but, as a healthy 31 year old woman, she certainly has an earning capacity of at least $125 per week, if employable full time. In that connection, however, the legislative guidelines, section 501(7), suggest that due consideration shall be given to "the extent to which it would be inappropriate for a party, because said party will be custodian of a minor child, to seek employment outside the home." Wife has primary custody of two children, ages ten and eight. They are, of course, in school, thus it is not entirely inappropriate for wife to be employed outside the home. Yet she must either tailor the hours she is employed to those during which the children are occupied in school, or, perhaps, arrange for baby-sitting services, which would reduce the net wages available to her. Still, taking such matters into account, we consider her to presently have an effective earning capacity of at least $100 per week.

We are required to consider the standard of living the parties established during the marriage. Theirs was an affluent lifestyle, as might be expected where husband grossed over $70,000 in the last few years the parties were together.

Husband is far more educated than wife. He has a medical degree. Wife has only one year of college. We are apparently to consider what might be "appropriate employment" for her, and to take into account what education or training might be necessary for her to be so employed: Section 501(b)(9). As noted heretofore, she expresses a desire to finish her college education, and become

qualified to teach. Certainly that is "appropriate," and we note that she married at age 19, leaving college to do so.

Considering all of the factors enumerated, and particularly those discussed above, equitably, wife is entitled to alimony. There remains the question of how much, for how long.

Considering these factors in inverse order, we conclude that a period of four years' assistance would be equitable. In that period, it will probably be possible for wife to obtain a college degree on a day student basis. Spreading credit hours over four years may also make it possible for her to be gainfully employed from time to time fully, and at other times, on a part time basis.

As to amount, $100 per week is appropriate. Husband is presently under an order of this court to pay wife $250 per week for the support of his two children. At his present rate of earnings, this additional amount will be a burden. However, as he becomes established in his practice in Florida, over the period of fours years, this amount will be less and less significant. It will be so ordered.

## COUNSEL FEES

Wife asks that husband be required to pay her counsel fees in the amount of $4,500. There appears to be no dispute that these fees are reasonable. Considering the substantial assets awarded wife in equitable distribution, the alimony awarded her herein, and her earning capacity, equitably, she should bear half the cost of her representation. Accordingly, husband will be directed to pay her on account of such fees, the sum of $2,250.

## DECREE NISI

And now, July 8, 1981, it is ordered and decreed:

## A. Equitable Distribution

The marital property of the parties is allocated and awarded as follows:

### To Jane G. Kiesel

1. Premises 190 Fawn Drive, Harleysville, Lower Salford Township, Montgomery County, Pa. subject to the existing mortgage balance which obligation she shall solely assume.

2. All household furnishings, appliances and accoutrements presently in place at the aforesaid premises.

3. The 1977 Chevrolet Nova automobile presently in her possission.

### To Vincent E. C. Kiesel

1. The family flat silverware.
2. His gun collection.
3. His pension equity.
4. The 1977 Ford Van presently in his possession.

## B. ALIMONY

Defendant, Vincent E. C. Kiesel is ordered to pay to the Domestic Relations Section, Court of Common Pleas of Montgomery County, the weekly sum of $100, for a period of four years from this date, as alimony for Jane G. Kiesel.

## C. COUNSEL FEES

Defendant, Vincent E. C. Kiesel, is ordered to pay to Jane G. Kiesel on account of counsel fees, the sum of $2,250 within 60 days of the date hereof.

Unless exceptions are filed hereto within ten days of service hereof, this decree shall become the final decree of the court as of course.